NOT DESIGNATED FOR PUBLICATION

No. 118,307

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
LANNY LENTZ.

MEMORANDUM OPINION

Appeal from Shawnee District Court; FRANK J. YEOMAN, JR., judge. Opinion filed February 8, 2019. Appeal dismissed.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, for appellant.

*Alan V. Johnson*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for appellees.

Before SCHROEDER, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM:  Decedent Lanny Lentz' three adult daughters were the heirs to his estate. His estate included several real properties, four of which are at issue. The district court distributed two of the properties to Diann Wyatt and the other two properties to Lana Kennedy and Marilyn Lentz as joint tenants in common. Diann appeals the district court's valuations of the four properties. But because we have concluded that Diann's appeal was not filed in a timely fashion, we are required to dismiss the appeal for lack of jurisdiction. But even if we were to reach the merits of Diann's issues on appeal, we find she did not properly raise them before the district court.

1

When Lanny died on December 4, 2012, he left behind three heirs, his adult daughters: Lana, Marilyn, and Diann. In his will, the decedent named Lana as the executrix of his estate. On September 11, 2013, Lana filed an inventory and valuation of the decedent's probate assets, which included 12 real properties. The inventory values for four of those properties, all located in Topeka and which are in question in this appeal, were: 605 SW Lindenwood Ave., valued at $83,680; 613 SW Lindenwood Ave., valued at $61,150; 517 SW Polk, valued at $17,640; and 2723 SE Monroe St., valued at $17,000.

On December 5, 2014, the three heirs signed a family settlement agreement (FSA) in which they followed a document the decedent executed in September 2007, directing certain real estate distributions. In the 2007 document, the decedent bequeathed 2723 Monroe to Marilyn, 517 Polk to Diann, and 605 Lindenwood to Lana. For 613 Lindenwood, he provided Lana the right of first refusal to purchase at fair market value, with the proceeds divided equally among the three heirs.

Lana filed the FSA with the petition for final settlement on September 16, 2015, after she had fully administered the estate. Lana decided to sell 613 Lindenwood for $56,000 and pay the other two beneficiaries $18,666.66 each, once the sale was complete.

Diann objected to Lana's petition, claiming the FSA did not contain all of the decedent's assets. Diann contended that Lana had not provided proof of several transactions and lacked authority for distributions to heirs. The district court conducted a hearing on the FSA and Diann's objections. Lana admitted she (1) failed to complete and accurately inventory the estate's property; (2) distributed estate assets without authority, including payments to herself; (3) breached her duty to care for the assets by failing to make timely deposits and failing to file tax returns; (4) engaged in self-dealing by making

2

loans to herself and distributing assets to herself without approval; and (5) delayed estate obligations to distribute assets. The court denied the petition.

On December 4, 2015, Diann moved for removal of Lana as executrix and requested that Lana reimburse the estate for damages by her negligence or mismanagement. In response, Lana contended that the heirs agreed on the FSA, as they believed it represented the decedent's wishes, and the division of the real properties had resolved issues regarding mismanagement of the estate. Lana petitioned the district court to accept her resignation and appoint Marilyn as the successor executrix. She also requested that the court approve the sale of real property to pay her expenses and attorney fees.

In March 2016, the district court accepted Lana's resignation and appointed Marilyn as her successor. Lana withdrew her petition to sell real estate, and Diann withdrew her objections to the revised accounting. The court approved the revised accounting and the inventory and valuation Lana filed in December 2015. The approved inventory and valuation contained the same values of the four real properties in question as above. Diann withdrew her petition for damages against Lana on May 9, 2016.

In September 2016, Marilyn filed for the district court to approve private sale of real estate properties. The court authorized sale of two properties, both of which Marilyn sold for $30,000 total. The court then assessed payment of $28,500 to Lana for attorney fees and expenses of $1,042.43, both to be paid from the assets of the estate.

On December 9, 2016, Marilyn filed a revised petition for final settlement. She claimed the two Lindenwood properties were subject to disagreement among the heirs. Marilyn appraised 613 Lindenwood and Lana appraised 605 Lindenwood. Copies of the appraisals were provided to each of the heirs but were not admitted into evidence and are not in the record. All nonappraised properties were valued at the lower of the original

3

inventory valuation or the certified market appraisal (CMA) by the executrix if the CMA value corresponded to a bona fide third-party discussion of purchase of the property in "as is" condition. Each nonappraised property was offered to each heir for purchase at those valuations.

To accomplish equal distribution of the real property, Marilyn and Lana agreed to take title of the real properties as joint tenants in common and include the obligations owed to each as executrixes as an offset against the valuations of the real properties distributed. Marilyn noted the court had approved Lana's executrix expenses and requested a $12,000 executrix fee. She proposed division of the real property as the decedent outlined in his will and the 2007 document. Marilyn valued 605 Lindenwood at $55,000; 613 Lindenwood at $30,000; and both 517 Polk and 2723 Monroe at $17,000 each. She proposed the court allocate the Lindenwood properties to her and Lana as joint tenants in common and that the Polk and Monroe properties be allocated to Diann.

Diann objected to the petition. She challenged several issues with the final settlement. Of significance, Diann contested the valuations for the Lindenwood properties, noting that the properties were appraised but the assigned values did not match the appraised values. Marilyn responded that the proposed values were equal to the appraised values minus costs of repairs deemed mandatory for sale of the properties.

Marilyn testified that the appraised value of 613 Lindenwood, less the approximate costs of mandatory repairs, was $34,000. Lana paid to have 605 Lindenwood appraised. That property was appraised at $60,000 but required $4,000 to $5,000 in repairs. Marilyn asked the district court to value the property at $55,000. She asked the court to value the 517 Polk property at $17,000 based on offers to purchase the property ranging from $15,000 to $18,000. She requested the court also value the 2723 Monroe property at $17,000 as the tenant offered to purchase the property for that amount. She stated that with those values less the fees and expenses to the executrixes,

4

each heir would receive a distribution valued at approximately $34,000. However, Diann pointed out that the offers to purchase the Monroe and Polk properties had not been written offers and it was unclear whether the offers remained. The CMA value of the Monroe property was $5,000.

The district court found that though Marilyn and Lana received distributions of $12,000, Diann received only $10,000 in distributions. Marilyn offered to redistribute the cash portion of the estate to accommodate for that difference. The court further determined that the same method of valuation needed to be used for all properties and considered a contract for purchase or a written offer as a reliable showing of value of the property. Marilyn offered to correct the two issues with the petition and submit the corrections for review by counsel then propose the journal entry based on the findings.

The district court issued the journal entry approving the final settlement and amended final accounting and inventory on December 30, 2016. Marilyn and Lana both approved the journal entry. Diann did not approve the journal entry but did not register any objections. The journal entry included an executrix fee of $12,000 and attorney fees in the amount of $36,000. The order granted attorney fees in the amount of $28,500 and $1,042.43 in fees for expenses while Lana had been executrix. The court approved a payment of not more than $700 for preparation of the final estate income tax return. The $21,799.13 Lana was to repay the estate was to be an offset against the property distribution. The $36,103.60 held by the Clerk of the District Court was to be deposited in the estate account for distribution. And Diann was to be paid $2,000 to equalize the distributions made to the other two heirs.

The district court directed use of CMA valuations for all properties other than the property with a contract for deed, which the court ordered the estate to sell to Marilyn for $12,000. The court distributed seven properties, including the Lindenwood properties, to

5

Lana and Marilyn as joint tenants in common. The court distributed the Polk and Monroe properties to Diann.

The district court granted the petition for final settlement and approved the amended final accounting and inventory. The court attached the real estate valuations per CMA to the journal entry. The CMA value of the properties at issue in this appeal are:

| Property: | CMA Value: |
|---|---|
| 517 Polk | $18,762 |
| 2723 Monroe | $17,833 |
| 605 Lindenwood | $38,787 |
| 613 Lindenwood | $41,098 |

Using the CMA valuation, the value of Diann's property distribution was $36,595 and the value of the properties distributed to Marilyn and Lana was $72,251.87, which provided a value of $36,251.94 each.

On January 27, 2017, Diann moved for the district court to set aside and/or reconsider the final settlement and reinstitute the claim for damages against Lana. The motion states it was filed "in part pursuant to K.S.A. 60-260(b)(1) and (2)" but did not cite to any other statutory section.

As noted above, Diann had previously filed her claim for damages against Lana in December 2015. At the hearing on the motion to set aside or reconsider, Diann testified that prior to the hearing on her claim in April 2016, she had obtained new counsel who advised Diann to dismiss the claim because "'she wouldn't get anything'" and the claim caused further disharmony in the family. Diann claimed that she "mistakenly believed that she did not have a valid claim based upon the representations of her counsel, felt unduly pressured to withdraw her claim, and now requests that it be reinstituted."

Diann also objected to the discharge of Marilyn as executrix and petitioned to disgorge Marilyn's administrative fee back to the estate. The district court concluded that Diann had been represented by counsel through every stage of the proceedings and had a fair opportunity to be heard. Evidence showed that she voluntarily withdrew her petition for damages. Therefore, the court found the petition and objections were meritless and denied them.

Diann appeals the district court's final valuations of the Monroe, Polk, and both Lindenwood properties.

ANALYSIS

*Jurisdiction to hear the appeal*

Diann's appeal was filed within 30 days after the entry of the district court's order denying her motion to set aside or reconsider the order of final settlement and reinstitute her claim for damages. Marilyn and Lana contend that this court does not have jurisdiction to review the valuations adopted by the district court in its order of final settlement. They claim that because Diann's motion to set aside or for reconsideration was filed under K.S.A. 2017 Supp. 60-260(b), the posttrial motion did not toll the time for appeal from the district court's orders of final settlement in the estate. Since the orders of final settlement, which included the valuations of the four properties, were filed on December 30, 2016, any appeal should have been filed by January 29, 2017. Therefore, they argue that Diann's appeal was untimely and thus this court does not have jurisdiction to hear this appeal and review the valuations.

Diann does not deny that a K.S.A. 60-260(b) motion does not toll the time for appeal but claims because her motions were captioned both as a request to set aside and to reconsider and were described as *in part* pursuant to K.S.A. 2017 Supp. 60-260(b)(1)

7

and (2), this court should consider her motion as a K.S.A. 60-259(f) motion to alter or amend judgment, which tolls the time for appeal. As authority, Diann relies on *Honeycutt v. City of Wichita*, 251 Kan. 451, 460, 836 P.2d 1128 (1992), which held that Kansas courts consider a motion to reconsider to be equivalent to a motion to alter or amend judgment, which tolls the running of the time for appeal until the motion is heard and decided.

Whether jurisdiction exists is a question of law over which our scope of review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). The right to appeal is entirely statutory, not constitutional. Subject to certain exceptions, our courts have jurisdiction to entertain an appeal only if the appeal is taken in the statutorily prescribed manner. *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016).

Under K.S.A. 2017 Supp. 60-206(b)(2), "[a] court must not extend the time to act under . . . K.S.A. 60-260(b)." However, a timely filed motion to alter or amend judgment under K.S.A. 2017 Supp. 60-259 tolls the time for appeal. *Bank of America v. Inda*, 48 Kan. App. 2d 658, 662, 303 P.3d 696 (2013). Thus, for this court to have jurisdiction to review Diann's complaints about valuations of the four properties, her motion must be appropriate for consideration as a motion to alter or amend judgment pursuant to K.S.A. 2017 Supp. 60-259(f).

Though Diann presents caselaw in support of her claim, the cited cases are distinguishable from hers. Diann first cites to *Bank of America*. In that case, a panel of this court determined that a district court may review a motion to reconsider as a motion to alter or amend based upon the content of the motion, not the heading. If the language of the motion is proper, it may allow for consideration as a motion under K.S.A. 2017 Supp. 60-259(f), even if that statute is not specifically invoked. See 48 Kan. App. 2d at 662. Though Inda, the pro se judgment-debtor appellant in *Bank of America*, provided K.S.A. 60-260(b) as the authority for the motion for reconsideration, courts liberally

8

construe pro se motions for substance rather than form. The panel hearing the appeal noted that Inda was not raising any new arguments but simply contending that the district court erred in its prior ruling granting summary judgment. Thus, because the substance of the motion amounted to a request that the district court's decision be altered, it fell under the exceptions that extend the time for appeal.

Unlike *Bank of America*, Diann was represented by counsel throughout the proceedings as well as on appeal. In light of this, the liberal construction granted to pro se litigants is not warranted on her motion. Nowhere in the motion to set aside and/or reconsider the order of final settlement is there any reference to K.S.A. 2017 Supp. 60-259(f). On appeal Diann contends that the inclusion of the qualifier "in part" prefacing her invocation of K.S.A. 2017 Supp. 60-260(b)(1) and (2) was adequate to bring the motion within the ambit of K.S.A. 2017 Supp. 60-259(f). But we believe this oblique reference is too slender a reed to support her argument and did not place either the district court or counsel for Lana and Marilyn on adequate notice that Diann was asking for the judgment to be altered or amended under K.S.A. 2017 Supp. 60-259(f).

But there is a more compelling reason why we believe Diann's case is much different than the fact pattern in *Bank of America*. The plain language of Diann's motion belies her contention that she was merely seeking to alter or amend the existing order of final settlement. Diann's entire motion to set aside and/or reconsider the final order of settlement essentially consists of complaints about bad legal advice from her prior counsel resulting in withdrawal of her request for damages against Lana. In fact, the closing sentence of Diann's motion prays that "the Order of Final Settlement be set aside *to the extent* to allow her to proceed with her damage claims against Lana Kennedy and her opposition to the discharge of Marilyn Lentz." (Emphasis added.) A review of the transcript from the hearing on the motion reveals that Diann's testimony and argument focused entirely on her belief she erroneously relied on prior counsel's advice and now wished to reinstate her damage claims against Lana. To us, this reads in substance much

9

more like a motion for relief from final judgment based upon a mistake or excusable neglect under K.S.A. 2017 Supp. 60-260(b)(1), which is precisely one of the statutory subsections mentioned in the opening sentence of Diann's motion. We take special note of the fact that nowhere was the issue of Diann's concern about values of the four properties raised or discussed at the hearing on the motion.

A motion to alter or amend judgment under K.S.A. 2017 Supp. 60-259 is essentially an attack on errors allegedly made by the district court. It makes sense that a party should not be punished, and possibly lose the ability to appeal, because they are waiting on the district court to correct its own errors. That is clearly the reason why such a motion tolls the statute of limitations. But where a motion does not serve this purpose of allowing a court to potentially correct its own error, it does not make sense to simply consider it as a motion to alter or amend judgment just to permit a timely appeal.

By contrast, a motion for reconsideration under K.S.A. 2017 Supp. 60-260(b) essentially asks for a whole new consideration of the issues based upon a party's own errors or the discovery of new evidence. Here it is undisputed that Diann *voluntarily* withdrew her request for damages against Lana. Whether she did this based on good or bad advice of counsel is beside the point. Diann says she made a mistake, but if this is true then it is clearly her own, or her counsel's, mistake, and no part of any decision arising from her choice to abandon her claims against Lana can be properly laid at the feet of the district court. A motion to reconsider under K.S.A. 2017 Supp. 60-260(b) asks for a whole new consideration of the issues based upon the parties' own errors, and the record clearly indicates that to be the situation here. We conclude that the deadline for appeal was not tolled by the motion to set aside and/or reconsider the order of final settlement of the estate, and thus the appeal was not timely filed.

Diann later asserts that *Vorhees v. Baltazar*, 283 Kan. 389, 394, 153 P.3d 1227 (2007), also requires courts to liberally construe jurisdictional rules to permit litigants the

10

opportunity to have their claims heard. However, in *Vorhees* the appellate court had discretion to dismiss the appeal. As we will discuss below, because of 2010 changes in the law after *Vorhees* was decided, if we cannot consider Diann's motion to be brought under K.S.A. 2017 Supp. 60-259(f), then we do not have discretion and must dismiss Diann's appeal.

In the next case cited by Diann, *Dieter v. Lawrence Paper Co.*, 237 Kan. 139, 143-44, 697 P.2d 1300 (1985), the Kansas Supreme Court analyzed the impact the 1979 amendment to K.S.A. 44-556(c) had on workers compensation appeals. The Supreme Court compared the motion for reconsideration to a K.S.A. 60-259 motion for a new trial. *Dieter* is inapplicable. Not only did the Supreme Court compare the motion to a motion for a new trial, but the case deals solely with interpretation of new legislative amendments to the workers compensation appellate procedures.

Finally, Diann relies on the decision in *Caplinger v. Carter*, 9 Kan. App. 2d 287, Syl. ¶ 1, 676 P.2d 1300 (1984), which stated "[a] motion to reconsider is in substance, if not form, a motion to alter or amend under K.S.A. 60-259(f) and stays the time for appeal until ruled on by the court." However, the court does not review K.S.A. 60-260(b) motions under K.S.A. 60-259(f) without having first analyzed the substance of the motion. 9 Kan. App. 2d at 290.

Of critical importance to our case is the fact the Kansas Legislature amended K.S.A. 60-206(b)(2) in 2010. Prior to 2010 amendments, K.S.A. 2009 Supp. 60-206(b) read as follows:

> "(b) *Enlargement.* When by this chapter or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the judge for cause shown may at any time in the judge's discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the

11

expiration of the period originally prescribed or as extended by a previous order or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under subsection (b) of K.S.A. 60-250, subsection (b) of K.S.A. 60-252, subsections (b), (e) and (f) of K.S.A. 60-259 and subsection (b) of K.S.A. 60-260, and amendments thereto, except to the extent and under the conditions stated in them."

A careful reading of this statute supports an interpretation that we had discretion, with the proper showing, to enlarge the time to act if the K.S.A. 60-260(b) motion was timely filed, essentially tolling the time for an appeal.

However, after the enactment of 2010 amendments to numerous civil procedure statutes, K.S.A. 2010 Supp. 60-206(b), which has remained substantively unchanged to date following its amendment, provides as follows:

"(b) *Extending time.* (1) *In general.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:

(A) With or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

(2) *Exceptions*. A court must not extend the time to act under subsection (b) of K.S.A. 60-250, subsection (b) of K.S.A. 60-252, subsections (b), (e) and (f) of K.S.A. 60-259 and subsection (b) of K.S.A. 60-260, and amendments thereto."

Thus, the 2010 amendment appears to have removed all discretion from this court and disallows an extension of time based on a K.S.A. 60-260(b) motion. A K.S.A. 60-259(f) motion tolls the clock for appeal, not by a determination by this court, but statutorily under K.S.A. 2017 Supp. 60-2103(a).

12

When the Legislature revises an existing law, we presume that the Legislature intended to change the law as it existed prior to the amendment. *Stueckemann v. City of Basehor*, 301 Kan. 718, 745, 348 P.3d 526 (2015). Thus we must presume the Legislature intended to remove discretion from tolling the time for appeal under a K.S.A. 60-260(b) motion. Such an amendment makes sense when one considers the purpose of the motions.

A party who files a motion under K.S.A. 2017 Supp. 60-260(b)(1) and (2) is requesting the district court grant relief from the judgment entered because the party erred, through "(1) [m]istake, inadvertence, surprise or excusable neglect"; or "(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under subsection (b) of K.S.A. 60-259, and amendments thereto." Subsection (c)(2) clarifies that such a motion has no bearing on the finality of the judgment nor does it suspend its operation. Essentially the party is attempting to make amends for their own errors. In the event of such an error by a party, it is reasonable that the district court be given the opportunity to make a determination based on all of the facts because the Court of Appeals generally does not consider an issue for the first time on appeal. *Cude v. Tubular & Equipment Services*, 53 Kan. App. 2d 287, 290, 388 P.3d 170 (2016) (citing *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 [2011]).

"This rule exists so that appellate courts do not interfere with trial court litigation. Also, it is better for the parties to fully brief and argue the issue at the trial court level instead of an appellate court deciding the issue without having the benefit of reviewing the briefs and the trial court's analysis. [Citations omitted.]" *Cude*, 53 Kan. App. 2d at 290.

The purpose of a K.S.A. 60-259(f) motion "is to allow a district court the opportunity to correct a prior error. It is not an opportunity for a party to present additional arguments or to offer additional evidence that the moving party could have— with reasonable diligence—presented prior to the entry of the final order." *Ross-Williams*

13

*v. Bennett*, 55 Kan. App. 2d 524, Syl. ¶ 20, 419 P.3d 608 (2018). Permitting a K.S.A. 60-259(f) motion to toll the appellate clock is reasonable because a party should not potentially lose the ability to appeal due to possible error by the district court.

As we have noted, Diann's motion was not an attempt to provide the district court an opportunity to correct a prior mistake but to revive a claim she voluntarily dismissed. The purpose of her motion was to further litigate issues that could have been fully litigated in the district court. Her motion was properly filed under K.S.A. 2017 Supp. 60-260(b) because she sought relief from the judgment based on her own mistake. The substance of her motion does not comport with the purpose of a K.S.A. 60-259(f) motion. Because of this, we do not consider Diann's motion as a motion to alter or amend judgment. Based on the content of her motion, the time for her appeal did not toll. This court does not have jurisdiction to review Diann's claim. Her appeal must be dismissed.

*District court's valuations of real estate in the order of final settlement*

Even if we were to find that proper jurisdiction existed to hear this appeal, we have determined that the issues raised by Diann lack merit and should not be addressed by us in this appeal.

Apart from her arguments on jurisdictional issues, the substance of Diann's appeal is her contention that Marilyn overvalued the Polk and Monroe properties and undervalued the Lindenwood properties. She claims Marilyn bore the burden of proving the accuracy of the final accounting, a burden that can be met only by providing substantial competent evidence to support the property valuations. See *In re Estate of Engels*, 10 Kan. App. 2d 103, 110, 692 P.2d 400 (1984); see also *In re Estate of Hjersted*, 285 Kan. 559, 569-70, 175 P.3d 810 (2008). While Marilyn provided copies of the appraisals for both Lindenwood properties to the parties, she did not admit the appraisals into evidence, and they are not part of the record on appeal.

14

Of critical importance to our consideration of these issues is the fact that Diann's complaints about the district court's valuation of the four disputed tracts were never raised or argued before the district court. The valuations to which Diann objects were set out in the district court's order of final settlement filed December 30, 2016. These valuations followed the district court's hearing on final settlement, at which the court ordered certain revisions to be made to the valuations presented at the hearing. Marilyn was directed to prepare and circulate a journal entry with the revised values reflecting its orders.

Marilyn provided the proposed journal entry with the corrected valuations as ordered, in accordance with Supreme Court Rule 170(a) (2019 Kan. S. Ct. R. 222). The final settlement valued all real estate per the CMA, as ordered by the district court. Marilyn submitted the CMA valuations to the parties on December 23, 2016. The final value of 605 Lindenwood was $38,787; 613 Lindenwood was $41,098; 517 Polk was $18,762; and 2723 Monroe was $17,833. The district court approved the final settlement and amended final accounting and inventory on December 30, 2016.

Diann objected only to Marilyn's proposed valuations of the properties prior to the final hearing, not to the district court's final valuations. Though she did not approve the journal entry prior to submission to the district court, she failed to object to the proposed journal entry within 14 days after service of the proposal. See Supreme Court Rule 170(c) (objection to proposed order must be served no later than 14 days after service on party that drafted it).

Generally, issues not raised before the district court cannot be raised on appeal. *Wolfe Electric, Inc.*, 293 Kan. at 403. Exceptions to the general rule include the following:  (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3)

15

the district court is right for the wrong reason. *State v. Spotts*, 288 Kan. 650, 652, 206 P.3d 510 (2009). If an issue raised on appeal was not raised below, the party must also explain why the issue is properly before the court. See Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34). That rule is to be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Diann does not contest that she received a copy of the CMA on December 23, 2016, as stated on the real estate valuation included in the journal entry. She also does not contend that the final values differed from those in the CMA. Diann challenges only the district court's approval of the values because the CMA was not submitted to the court, and the CMA values fell outside the range of values previously provided to the court. She does not appear to challenge the values as being inconsistent with the CMA, only that the district court had no basis for confirming the proposed values. However, both Marilyn and Lana agreed that the approved values reflected the CMA, and Diann failed to object. Diann only contested the values as arbitrary in that the specific values were not in the record.

Diann does not contend the values approved differed from the CMA values, and she never contested having been provided the CMA. Her only issue is that Marilyn did not present the CMA to the district court. However, Marilyn provided the proposed journal entry as directed by the court, having all properties valued under the same method. The valuations were sent to each party, and no parties objected to the values. The district court did not err in approving the CMA property values.

We also take note of the fact that Diann's "Petition to Set Aside and/or Reconsider the Order of Final Settlement and Reinstitute Claim for Damages Against Former Executrix Lana Kennedy," which was filed 28 days after the journal entry of final settlement was entered, made no mention whatsoever of the district court's valuation of the four properties she now complains of in this appeal. Diann likewise never argued

16

those issues or testified concerning them at the hearing on her motion, focusing exclusively on her desire to reopen the case and pursue her damage claims against Lana, former executrix. Since Diann never gave the district court a chance to address those complaints on valuation, and has not explained why we should grant an exception and now hear those matters on appeal, we decline to consider them for the first time in this appeal.

Appeal dismissed.